IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RITE AID HDQTRS. CORP., | : | 1:14-cv-1276 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| ORLY PLASTICS ENTERPRISE, INC., | : | |
| and ORLY INDUSTRY, INC., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

**November 20, 2014**

Four motions are presently pending before the Court in this action:

Plaintiff's Motion to Remand to State Court; Defendants' Motion to Dismiss;

Plaintiff's Motion for Leave to Amend the Complaint; and the Motion of Thomas

Thomas & Hafer LLP to Withdraw as Counsel for Defendants.  Based on the

discussion herein, the Court will remand this matter to the Court of Common Pleas

of Cumberland County and, accordingly, abstain from adjudicating the other

motions.

## I.    FACTUAL BACKGROUND

This action, sounding in breach of contract and unjust enrichment, involves

certain transactions between Plaintiff, Rite Aid HDQTRS. Corp. ("Rite Aid"), a

Delaware corporation with a principal place of business in Pennsylvania, and

Defendants, Orly Plastics Enterprise, Inc. and Orly Industry, Inc., based in New

York.  According to the Complaint, Rite Aid and Orly Plastics entered into a

Master Purchase Agreement (the "MPA" or the "Agreement") effective August 1,

2010, and expiring July 31, 2011, pursuant to which Rite Aid agreed to purchase

plastic trash can liners ("liners") from Orly Plastics.  (Doc. 1-1, ¶¶ 10, 16).

Although the MPA expired on a date certain, it could be "extended by the mutual

written consent of the parties." (*Id.* Ex. A, ¶ 2.8).  The Agreement delineated

certain size, thickness, and quantity specifications for the liners.  (*Id.* ¶ 10).  In

terms of the parties obligated under the MPA, it stated that it "shall be binding on

and shall benefit any and all successors, trustees, permitted assigns and other

successors in interest of the Parties." (*Id.* ¶ 15).  It also contained an alternative

dispute resolution ("ADR") clause and a provision stating that the Agreement

would be governed by the laws of Pennsylvania and that litigation not subject to

ADR "shall be brought exclusively in the Court of Common Pleas for Cumberland

County, Pennsylvania." (*Id.* ¶ 6; Ex. A, ¶ 6.6).

    The parties' transactions commenced in August 2010 and continued through

the fall of 2011.  (*Id.* ¶ 16).

    On August 1, 2011, Orly Industry requested that "the name on file" with

Rite Aid be changed from Orly Plastics to Orly Industry. (*Id.* ¶ 17). As no new vendor paperwork was filed and an IRS W-9 form was not provided, Rite Aid did not treat Orly Industry as a new vendor but as the alter ego of Orly Plastics. (*Id.*). Rite Aid maintains that Orly Plastics and Orly Industry shared the same address, phone number, facsimile number, email address, principal, and computers, and were essentially the same entity or that Orly Industry was the successor of Orly Plastics. (*Id.* ¶¶ 9, 20).[1]

In the fall of 2011, Rite Aid became suspicious that Defendants were shortchanging Rite Aid with respect to the quantity included in and the weights of the liner shipments. (*Id.* ¶ 23). Random inspections of cases of liners revealed that all of the examined cases were light in weight and/or short in count. (*Id.* ¶ 24). Rite Aid believes and avers that Defendants had been deficiently fulfilling its orders since the inception of the MPA; by its calculations, Rite Aid was shortchanged by an average of 29.07% of what Rite Aid had paid and what Defendants were required to provide under the MPA. (*Id.*).

Rite Aid thereafter contacted Defendants' principal, Mr. Jacob Torkieh, in an effort to resolve the issue and requested $200,000, the amount Rite Aid believed

---

[1] According to Rite Aid, Orly's name change was the result of the dissolution of Orly Plastics after it failed to pay New York state taxes and sought to escape liability. (*Id.* ¶ 18).

it was owed.  (*Id.* ¶ 25).  Mr. Torkieh did not deny the allegation but, instead,

outlined various ways Orly Industry would "make it up" to Rite Aid.  (*Id.*).

As of September 28, 2011, Rite Aid had paid Defendants a total of

$724,824.20.  (*Id.* ¶ 26).  After it became apparent that Defendants had been

defrauding them, Rite Aid ceased payment on all further invoices from Orly

Industry.  (*Id.*).  Rite Aid's Senior Buyer sent a letter to Orly Industry dated

December 29, 2011, demanding repayment in the amount it had calculated in liner

shortages, advising that it would not make payments on the then-current invoices

which totaled $72, 563.05, and requesting mediation pursuant to the MPA's ADR

clause.  (*Id.* ¶ 27).

Orly Industry never responded to the letter and filed a lawsuit against Rite

Aid in state court in New York seeking payment of outstanding invoices.  (*Id.* ¶

28).  Rite Aid removed the case to the United States Court for the Eastern District

of New York and thereafter filed a motion to dismiss.  (*Id.*; *see Orly Industry, Inc.

v. Rite Aid HDQTRS. Corp.*, No. 12-855 (E.D.N.Y.)).  On August 23, 2013, the

New York district court issued an order granting the motion in part on improper

venue grounds.  (Doc. 6-2).  The court reasoned that the MPA's mandatory forum

selection clause governed those transactions predating the expiration of the

Agreement (*i.e.*, the purchases occurring before July 31, 2011) and that, even

though Orly Industry was a nonsignatory to the MPA, it was bound by the same because it was closely related to Orly Plastics. (*Id.* pp. 8-10). Since no written consent had been executed extending the Agreement, the court determined that the transactions post-dating July 31, 2011 were not covered by the MPA and, thus, that its forum selection clause was inapplicable to those later purchases. (*Id.* p. 8). Following the district court's decision, Rite Aid answered the pleading and asserted counterclaims based on breach of contract and unjust enrichment. The post-expiration purchases continue to be litigated in the New York district court.

In the instant matter, Rite Aid advances claims sounding in breach of contract or implied contract (Count I) and unjust enrichment (Count II). (Doc. 1-1, ¶¶ 30-42). It calculates damages as follows:

> Based upon the amount Rite Aid paid to Orly Plastics and Orly Industry from the inception of the MPA through September 2011 and the average liner weight shortage of 29.07%, Rite Aid is entitled to a rebate in the amount of $210,706.33. Deducting the $72,563.05 amount in invoices put on hold by Rite Aid with a discount of 29.07% to account for Orly Industry's short orders, Rite Aid is owed $160,109.46.

(*Id.* ¶ 29).

## II.   PROCEDURAL HISTORY

Rite Aid commenced this action by filing a Complaint (Doc. 1-1) in the Cumberland County Court of Common Pleas, Pennsylvania, on May 30, 2014.

Defendants removed the action to this Court on July 2, 2014, based on diversity jurisdiction.  (Doc. 1).  In the period following removal, the parties filed four motions, all of which are pending and described below in the order that they were submitted.

### A.   Plaintiff's Motion to Remand to State Court

On July 3, 2014, one day after this matter was removed to this Court, Rite Aid filed a Motion to Remand to the Court of Common Pleas of Cumberland County and a supporting brief.  (Docs. 5, 6).  Rite Aid argues that the MPA's forum selection clause mandates that all litigation be filed in the Cumberland County Court of Common Pleas.  As additional support, Rite Aid cites the Memorandum and Order of the Eastern District of New York, which indicated the Cumberland County court as the appropriate forum to litigate transactions occurring before the expiration of the MPA and, also, determined that Orly Industry was bound by the MPA as the successor to Orly Plastics.  (Doc. 6-2).  In addition, Rite Aid seeks fees and costs associated with the removal.

Defendants respond that Rite Aid's claims in the instant matter mirror the counterclaims it advanced in the Eastern District of New York, and that, by filing such counterclaims, Rite Aid waived its right to enforce the forum selection clause of the MPA.  In Defendants' words, "Rite Aid's only concern is an adverse ruling

on the merits of its counterclaims in the New York Action.  Rite Aid filed its suit in

Cumberland County to hedge against such an adverse ruling by seeking an

inconsistent judgment on the same claims." (Doc. 11, p. 7).

### B.      Defendants' Motion to Dismiss

Also on July 3, 2014, Defendants filed a Motion to Dismiss and a brief in

support.  (Docs. 7, 8).  As alternative relief, Defendants seek transfer of the case to

the Eastern District of New York.  Similar to their opposition of the Motion to

Remand, Defendants argue that the claims Rite Aid forwards in the instant

Complaint are the same as the counterclaims Rite Aid has asserted in the New

York action, involving transactions both prior and subsequent to the expiration of

the MPA.  Defendants maintain that the first-filed rule dictates that the New York

litigation should have priority as, in their view, the cases involve the same parties

and issues, and, if both actions proceeded, could result in inconsistent judgments.

In answer to any contention that pre-expiration transactions are excluded from the

New York action, Defendants highlight that, although *Orly Industry*'s claims

occurring before the expiration of the MPA were dismissed, Rite Aid's

counterclaims in that matter appear to encompass such pre-expiration transactions,

and those counterclaims remain pending.  Defendants highlight that Rite Aid's

pleading here details transactions occurring after the expiration of the MPA and

that it includes Orly Industry as a party, although Rite Aid had no dealings with

Orly Industry while the MPA remained in force.

In opposition, Rite Aid contends that the Pennsylvania case involves a party

that is not in the New York matter – namely, Orly Plastics – and different subject

matter, *i.e.*, the transactions between the parties which preceded the expiration of

the MPA.  Rite Aid highlights that the New York court dismissed the pre-

expiration transactions for lack of venue and, later, expressly stated in a discovery

order that the transactions "governed by the [MPA]'s venue provisions . . . are not

properly before this Court."  (Doc. 12-3, p. 6).  In any event, inasmuch as the

instant Complaint appears to capture transactions occurring after July 31, 2011

because of certain "drafting issues," Rite Aid agrees that those disputes are not

properly part of this litigation.  (Doc. 12, p. 2).

### C.    Plaintiff's Motion to Amend Complaint

Rite Aid filed a Motion for Leave to Amend the Complaint on October 23,

2014 (Doc. 21), and, five days later, a brief in support (Doc. 22).  The proposed

amendments clarify that Rite Aid's instant claims pertain only to the parties'

dealings from August 1, 2010, until July 31, 2011, the period that the MPA

remained in force.  Rite Aid states a diminished damages claim "in an amount in

excess of $75,000."  (Doc. 21-2, ¶ 33).  In support of its motion, Rite Aid centrally

asserts that the proposed amendment will not prejudice Defendants as it adds no new facts or legal theories but merely clarifies the contours of the present claims.

Although opposition papers were due on November 11, 2014, none have been submitted.

### D.      Counsel for Defendants' Motion to Withdraw as Counsel

On November 12, 2014, counsel for Defendants, Thomas Thomas & Hafer LLP ("TT&H"), filed a Motion to Withdraw as Counsel and a supporting brief (Docs. 23, 24).  TT&H represents that, except for an initial retainer fee held in trust, Defendants have not remitted full payment for legal services rendered, and unpaid invoices have accrued in excess of $13,000.00.  Defendants' principal, Mr. Torkieh, has explicitly expressed that Defendants do not intend to honor their obligation to pay the outstanding fees.  TT&H has advised Defendants in writing that unless payment is remitted, TT&H will be forced to move the Court to withdraw as counsel.  Furthermore, apparently Defendants and TT&H have been unable to agree upon the legal actions required to defend this action, including responding to discovery.  In addition to leave to withdraw as counsel, TT&H moves this Court to modify certain case management deadlines.

As to Defendants' position, TT&H avers that Defendants have not objected to the filing of the instant motion for leave to withdraw as counsel and that

Defendants are in the process of obtaining new lawyers.  Also, counsel for Plaintiff

concurs in the motion insofar as TT&H seeks leave to withdraw but disagrees with

certain scheduling proposals.

## III.   DISCUSSION

In evaluating the web of issues before us, we turn first to the primary

question of whether adjudication is appropriate in this tribunal, in other words,

whether this Court has proper venue.

Generally speaking, a forum selection clause binds the contracting parties to

a specific venue or jurisdiction.  *See* 92A C.J.S. § 14.  The existence of such clause

does not affect a court's subject matter jurisdiction but, rather, directs a court to

abstain from exercising it.  *See Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1212

n. 7 (3d Cir. 1991). These clauses are prima facie valid, entitled to great weight,

and should be implemented unless the opposing party shows that enforcement

would be unreasonable.  *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10

(1972); *MTR Gaming Grp. v. Arneault*, 899 F. Supp. 2d 367, 373 (W.D. Pa. 2012).

"If a defendant has removed a case in violation of a forum selection clause, remand

is the appropriate and effective remedy for the wrong."  *PGT Trucking, Inc. v.*

*Lyman*, 500 Fed. Appx. 202, 204 (3d Cir. 2012) (citing *Foster*, 933 F.2d at 1217

(3d Cir. 1991)).

Here, it is undisputed that the MPA contains a mandatory forum selection clause requiring litigation to proceed in the Cumberland County Court of Common Pleas.  Further, Defendants do not challenge the clause on reasonableness grounds. Rather, the gravamen of Defendants' contention is that Rite Aid has waived the forum mandate by advancing counterclaims in the Eastern District of New York.

Contrary to Defendants' view, Rite Aid has not waived its right to enforce the forum selection clause.  Had Rite Aid initiated the action in New York, our analysis might be different.  *Cf. MTR Gaming*, 899 F. Supp. 2d at 375 ("When a party chooses to file suit upon a contract in an unauthorized venue in direct contravention to the contract's forum selection clause, it is not surprising that courts would infer the party's abandonment of its rights under the forum selection provision.").  However, simply put, it was Defendants – not Rite Aid – that filed the New York action.  Rite Aid defended that suit on the primary basis that an action to enforce rights under the MPA must comply with the Agreement's forum selection provision.  (*See*, *e.g.*, Doc. 6-2, p. 6).  It was only when the district judge ruled that various of the transactions in issue were *not* governed by the MPA – and dismissed those transactions effectuated during the life of the Agreement – that Rite Aid was constrained to file counterclaims in the New York tribunal.  In other words, the only claims remaining in the New York action are those determined to

be outside of the MPA and its forum selection clause.  It strains logic that Rite Aid

could waive its rights under the Agreement in litigating an action that is not subject

to it.

Having determined that Rite Aid did not waive its rights under the forum

selection clause of the MPA, we hold that the clause must be enforced consistent

with the parties' bargain.  As Rite Aid's Complaint seeks to enforce its rights

pursuant to the MPA, we remand this matter to the Cumberland County Court of

Common Pleas.[2]

Turning to Rite Aid's request for payment of fees and costs, we note that we

have "broad discretion" to grant such an award, *Mints v. Educ. Testing Serv.*, 99

F.3d 1253, 1260 (3d Cir. 1996), and may appropriately do so "only where the

removing party lacked an objectively reasonable basis for seeking removal," *Lott v.

Duffy*, No. 13-1580, 2013 WL 5876977, at *3 (M.D. Pa. Oct. 20, 2013) (quoting

*Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)) (internal quotation

marks omitted).  While Defendants' rationale for removal based on waiver may

---

[2] Parenthetically, Defendants' argument that the Complaint as initially filed encompasses transactions outside of the MPA is not unfounded.  For example, Rite Aid's damages calculation appears to include the totality of the parties' dealings and was not limited to those transactions occurring between August 1, 2010, and July 31, 2011.  (*Id.* ¶ 29).   That being said, through briefing and a proposed amendment to the pleading, Rite Aid has clarified that it seeks to recover only for purchases falling squarely within the MPA, reinforcing that venue is proper in the Court of Common Pleas for Cumberland County.

have been thin and ultimately lacked merit, we do not view it as utterly "frivolous"

or "insubstantial." *South Annville Twp. v. Kovarik*, No. 13-1780, 2014 WL

2864898, at *2 (M.D. Pa. June 24, 2014) (quoting *Siebert v. Norwest Bank Mn.*,

166 Fed. Appx. 603, 607 (3d Cir. 2006)) (internal quotation marks omitted).  Thus,

we decline the fees request.

Lastly, because we direct the removal of this action, we are restrained from

adjudicating the remaining motions.  *See generally Foster*, 933 F.2d at 1216

(explaining that, once the district court determined that the forum selection clause

barred the defendant from removing the action, "it would have been committing

clear error—and violence to the parties' contract—had it nevertheless continued to

hear the case").[3]

An appropriate Order shall issue.

---

[3]  It is with reluctant but necessary discipline that we refrain from ruling on Rite Aid's motion for leave to amend its pleading, which we view as non-prejudicial and salutary, and, also, TT&H's motion for leave to withdraw as counsel.  The latter motion is notably concurred-in and appears meritorious, *see*, *e.g.*, *Max-Um Fin. Holding Corp. v. Moya Overview, Inc.*, No. 88-6345, 1990 WL 136380, at *1 (E.D. Pa. Sept. 19, 1990) (permitting counsel to withdraw where clients failed to fulfill their obligation to pay their lawyers for services rendered and had no plans for the payment of future fees),  and it is regrettable that Defendants' counsel must remain in this action for the time being.  We are confident that these motions will be easily disposed of by the Court of Common Pleas.